## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

DANIEL FREY,

      Plaintiff,

      v.

CARBON BLACK, INC., PATRICK MORLEY,
JEFFREY FAGNAN, TOM KILLALEA, RONALD NORDIN,
VANESSA PEGUEROS, JOSEPH TIBBETTS, JR., JILL WARD,
and ANTHONY ZINGALE,

      Defendants.

---

## COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS AND JURY DEMAND

---

Plaintiff Daniel Frey ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

## <u>NATURE OF THE ACTION</u>

1.      This is an action against Carbon Black, Inc. ("Carbon Black" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(e), 14(d)(4), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(e), 78n(d)(4), and 78t(a), and Rule 14d-9 promulgated thereunder by SEC, 17 C.F.R. § 240.14d-9, in connection with the proposed acquisition of Carbon Black by VMware, Inc. ("VMware") through its indirect wholly-owned subsidiary, Calistoga Merger Corp. (the "Proposed Transaction").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 14(e), 14(d)(4), and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(e), 78n(d)(4), and 78t(a)) and Rule 14d-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14d-9).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the Company maintains offices in this District and/or Defendants conduct business in this District.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff is, and has been at all relevant times hereto, an owner of Carbon Black common stock.

7.      Defendant Carbon Black provides security solutions in the United States and internationally. Carbon Black is incorporated in Delaware and maintains offices at 1433 Pearl Street, Boulder, Colorado 80302. Carbon Black's common stock trades on the Nasdaq Global Select Market under the ticker symbol, "CBLK."

8.      Defendant Patrick Morley ("Morley") is the President, Chief Executive Officer, and a director of Carbon Black.

9.      Defendant Jeffrey Fagnan ("Fagnan") is a director of Carbon Black.

2

10.     Defendant Tom Killalea ("Killalea") is a director of Carbon Black.

11.     Defendant Ronald Nordin ("Nordin") is a director of Carbon Black.

12.     Defendant Vanessa Pegueros ("Pegueros") is a director of Carbon Black.

13.     Defendant Joseph Tibbetts, Jr. ("Tibbetts") is a director of Carbon Black.

14.     Defendant Jill Ward ("Ward") is a director of Carbon Black.

15.     Defendant Anthony Zingale ("Zingale") is a director of Carbon Black.

16.     Defendants Morley, Fagnan, Killalea, Nordin, Pegueros, Tibbetts, Ward, and Zingale are collectively referred to herein as the "Individual Defendants."

17.     Defendants Carbon Black and the Individual Defendants are collectively referred to herein as the "Defendants."

## OTHER RELEVANT ENTITIES

18.     VMware offers cloud, networking and security, and digital workspace offerings to customers in the U.S. and around the world. VMware is a Delaware corporation with principal executive offices located in Palo Alto, California. VMware's common stock is traded on the New York Stock Exchange under the ticker symbol, "VMW."

## SUBSTANTIVE ALLEGATIONS

### A. Background of the Company

19.     Carbon Black holds itself out to be a "leading provider of next-generation endpoint security solutions that enable customers to predict, prevent, detect, respond to and remediate cyberattacks before they cause a damaging incident or data breach."

20.     To capitalize on its product offerings in the burgeoning cyber security industry and to further grow its customer base and fund growth strategies, Carbon Black conducted an initial

public offering ("IPO") in May 2018.[1] In the IPO, Carbon Black sold 8 million shares of common stock for around $19 per share.

21.     Since its IPO, the Company has reported positive financial results and business prospects. On August 1, 2019, the Company announced its financial results for the second quarter ended June 30, 2019. The Company reported quarterly revenue of $60.9 million, a 19% increase year-over-year. The Company's cloud revenue was $22.9 million, a 68% increase year-over-year. Defendant Morley stated the following concerning the Company's positive financial results:

> Carbon Black's second quarter results demonstrated the company's successful transition to a cloud first company powered by our leading, cloud-native endpoint protection platform (EPP), the Predictive Security Cloud® (PSC)[.] We reached an important milestone in the quarter with cloud ARR exceeding $100 million, which reflects growing customer demand for a cloud EPP solution that can successfully protect against today's increasingly sophisticated cyberattacks.
>
> Our cloud EPP, which includes highly differentiated products like CB ThreatHunter and CB LiveOps™, is extending the boundaries of the EPP market.  Customer reaction to our expanded product portfolio remains very positive and gives us confidence Carbon Black can drive strong cloud growth for the foreseeable future.

22.     Despite the forgoing, the Proposed Transaction was announced less than 16 months after the Company's IPO.

**B. The Proposed Transaction**

23.     On August 22, 2019, VMware issued a press release announcing that it had entered into a definitive merger agreement with Carbon Black whereby VMware would commence a tender offer to purchase all outstanding shares of Carbon Black common stock for $26.00 per share

---

[1] According to the Company's IPO Registration Statement, filed with the SEC on May 2, 2018, "the market for enterprise endpoint security software, [Carbon Black's] primary market, was $6.5 billion in 2016 and is expected to reach $8.3 billion by 2021." The Registration Statement also highlighted how the markets for security management, public cloud security software, and IT asset management were expected to substantially grow between 2016 and 2021.

in cash. The press release states, in pertinent part:

### VMware Enters Definitive Agreement to Acquire Carbon Black

August 22, 2019 16:21 ET | **Source:** VMware, Inc.

*Combination creates highly differentiated, intrinsic security cloud that will protect workloads and clients through big data, behavioral analytics and AI*

*$26 per share cash transaction, representing an Enterprise Value of $2.1 billion*

PALO ALTO, Calif., Aug. 22, 2019 (GLOBE NEWSWIRE) -- VMware, Inc. (NYSE: VMW), a leading innovator in enterprise software, and Carbon Black (NASDAQ: CBLK), a leader in cloud-native endpoint protection, today announced that the companies have entered into a definitive agreement by which VMware will acquire Carbon Black in an all cash transaction for $26 per share, representing an enterprise value of $2.1 billion. Following the close of the transaction, VMware will be positioned to provide a highly differentiated, intrinsic security cloud that will better protect enterprise workloads and clients through big data, behavioral analytics and AI.

\*     \*     \*

**DETAILS REGARDING THE TRANSACTION**
Under the terms of the transaction, which is structured as a cash tender offer, Carbon Black shareholders who validly tender (and do not properly withdraw) their shares in Carbon Black, will receive $26 per share in cash, representing an enterprise value of $2.1 billion. The transaction is expected to be funded through cash on the balance sheet, and by accessing short-term borrowing capacity. Closing of the transaction is expected in the second half of VMware's fiscal year 2020, ending January 31, 2020, and is subject to customary conditions, including, VMware's acquisition of at least a majority of the shares of Carbon Black, and the expiration or termination of the required waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, among others.

**Advisors**
J.P. Morgan Securities LLC served as financial advisor and Morrison & Foerster LLP served as legal counsel to VMware.  Morgan Stanley & Co. LLC served as exclusive financial advisor and Goodwin Procter LLP served as legal counsel to Carbon Black.

24.     On September 6, 2019, Carbon Black filed with the SEC a Schedule 14D-9

Solicitation/Recommendation Statement under Section 14(d)(4) of the Exchange Act (the

"Solicitation Statement") in connection with the Proposed Transaction.

### C. Interests of Carbon Black Insiders

25.     Carbon Black insiders are substantial beneficiaries of the Proposed Transaction.

26.     The Solicitation Statement summarizes cash payouts to Carbon Black officers and directors in connection with the consummation of the Proposed Transaction, as follows:

| | Vested Company Options(1) | | | Vested Company RSUs(1) | | |
| | Shares of Common Stock Underlying Vested Company Options | Weighted Average Exercise Price | Aggregate Vested Company Option Payment(2) | Company RSUs | Aggregate Company RSUs Payment(3) | Total Equity Award Consideration |
|---|---|---|---|---|---|---|
| **Executives** | | | | | | |
| Patrick Morley | 2,275,069 $ | 4.22 | $49,547,013 | — $ | — $ | 49,547,013 |
| Thomas Hansen | 180,538 $ | 6.09 | $ 3,594,720 | — $ | — $ | 3,594,720 |
| Ryan Polk | 74,451 $ | 6.57 | $ 1,446,565 | — $ | — $ | 1,446,565 |
| Michael Viscuso | 495,207 $ | 2.42 | $11,675,041 | — $ | — $ | 11,675,041 |
| Stephen Webber | — | — | — | — $ | — | — |
| | | | | | | |
| **Directors** | | | | | | |
| Jeffrey Fagnan | — $ | — $ | — | 9,375 $ | 243,750 $ | 243,750 |
| Tom Killalea | 125,000 $ | 5.88 | $ 2,515,000 | 9,375 $ | 243,750 $ | 2,758,750 |
| Ronald H. Nordin | 104,792 $ | 4.76 | $ 2,225,603 | 9,375 $ | 243,750 $ | 2,469,353 |
| Vanessa Pegueros | — $ | — $ | — | 18,975 $ | 493,350 $ | 493,350 |
| Joseph S. Tibbetts, Jr. | 148,442 $ | 5.30 | $ 3,073,031 | 9,375 $ | 243,750 $ | 3,316,781 |
| Jill A. Ward | — $ | — $ | — | 22,091 $ | 574,366 $ | 574,366 |
| Anthony Zingale | 205,300 $ | 5.40 | $ 4,229,104 | 9,375 $ | 243,750 $ | 4,472,854 |

27.     Certain Carbon Black executives stand to receive substantial cash severance payments in the form of golden parachute compensation if they are terminated in connection with the Proposed Transaction:

| Name | Cash(2) | Equity(3) | Perquisites/ Benefits(4) | Total |
|---|---|---|---|---|
| Patrick Morley | $ 1,351,875 $ | 15,701,398 $ | 38,469 $ | 17,091,742 |

| | | | | |
|---|---|---|---|---|
| Thomas Hansen | $ | 800,000 $ | 10,747,121 $ | 23,499 $ | 11,570,620 |
| Mark Sullivan(5) | $ | — $ | — $ | — $ | — |

28.     Further, certain Carbon Black insiders secured positions for themselves upon consummation of the Proposed Transaction. Defendants Morley, Chief Operating Officer Thomas Hansen ("Hansen"), and Chief Product Officer and Senior Vice President Ryan Polk ("Polk") entered into offer letters providing for their continued employment with VMware after the closing of the Proposed Transaction. The offer letters are contingent on the closing of the Proposed Transaction.

### D. The Solicitation Statement Contains Materially False and Misleading Statements and Omissions

29.     The Solicitation Statement, which recommends that Carbon Black shareholders tender their shares to VMware in connection with the Proposed Transaction, omits and/or misrepresents material information concerning: (i) the financial analyses performed by Carbon Black's financial advisor, Morgan Stanley & Co. LLC ("Morgan Stanley"), in connection with its fairness opinion; (ii) the sales process leading up to the Proposed Transaction; and (iii) potential conflicts of interest involving Morgan Stanley.

30.     The omission of the material information (referenced below) renders the following sections of the Solicitation Statement false and misleading, among others: (i) Background of the Transactions; (ii) Reasons for the Recommendation of the Board; (iii) Certain Prospective Financial Information; and (iv) Opinion of the Company's Financial Advisor.

31.     VMware's tender offer is currently set to expire on October 3, 2019 (the "Expiration Date"). It is imperative that the material information that was omitted from the Solicitation Statement be disclosed to the Company's shareholders prior to the Expiration Date to

allow them to make an informed decision as to whether to tender their shares in this cash-out merger that, if approved, would deprive Carbon Black shareholders from benefitting from the Company's future growth and prospects. Plaintiff may seek to enjoin Defendants from closing the tender offer or the Proposed Transaction unless and until the material misstatements and omissions (referenced below) are remedied. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning Morgan Stanley's Financial Analyses

32.     In connection with the Proposed Transaction, the Solicitation Statement omits material information concerning analyses performed by Morgan Stanley.

33.     The Solicitation Statement fails to disclose the following concerning Morgan Stanley's "*Discounted Cash Flow Analysis*": (1) the estimated unlevered free cash flows of the Company after calendar year 2029 and all underlying line items; (2) the value of the Company's existing and newly created tax attributes; (3) the individual inputs and assumptions underlying (i) the range of discount rates from 8.0% to 10.0%, and (ii) the perpetuity growth rates ranging from 2.0% to 4.0%; and (4) the range of terminal values of the Company.

34.     The Solicitation Statement fails to disclose the following concerning Morgan Stanley's "*Discounted Equity Value Analysis*": (1) the Street Case calendar year 2022 estimated revenue; (2) the Street Case projected net cash; (3) the Management Case projected net cash; (4) the individual inputs and assumptions underlying (i) the discount rate of 9.0%, (ii) the forward AV/Revenue multiple range of 4.0x to 6.0x, and (iii) the forward AV/Revenue multiple range of 5.0x to 7.0x; and (5) the Company's fully diluted share count utilized by Morgan Stanley in its analysis.

35.     The Solicitation Statement fails to disclose the following concerning Morgan

Stanley's "*Public Trading Comparables Analysis*": (1) the individual metrics of each of the companies observed by Morgan Stanley, including, but not limited to, the earnings, "revenue and/or revenue growth rates, market capitalizations, profitability, scale and/or other similar operating characteristics"; and (2) Morgan Stanley's rationale for valuing the Company based on AV/Revenue multiples.

36.     The Solicitation Statement fails to disclose the following concerning Morgan Stanley's "*Precedent Transactions Analysis*": (1) Morgan Stanley's basis for its opinion that the "selected transactions [] share some characteristics with the potential transaction[,]" and those specific similar characteristics; and (2) Morgan Stanley's specific rationale for evaluating these transactions based on AV/NTM Revenue.

37.     The Solicitation Statement fails to disclose the following concerning Morgan Stanley's "*Premiums Paid Analysis*": (1) the selected software transactions observed by Morgan Stanley in its analysis; (2) the individual premiums paid in each transaction observed by Morgan Stanley; and (3) the individual multiples and financial metrics of the companies involved in each transaction.

38.     The valuation methods, underlying assumptions, and key inputs used by Morgan Stanley in rendering its purported fairness opinion must be fairly disclosed to Carbon Black shareholders. The description of Morgan Stanley's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Carbon Black shareholders are unable to fully understand Morgan Stanley's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on it in determining whether to tender their shares to VMware. This omitted information, if disclosed, would significantly alter the total mix of information available to Carbon Black

shareholders.

**2. Material Omissions Concerning the Sales Process Leading to the Proposed Transaction**

39.     The Solicitation Statement omits material information concerning the sales process leading up to the Proposed Transaction.

40.     The Solicitation Statement states that, "[o]n August 22, 2019, VMware entered into offer letters with each of Messrs. Morley, Hansen and Polk setting forth the terms and conditions of these executive officers' continued employment with VMware from and after the closing of the Transaction."

41.     The Registration Statement, however, fails to disclose the details of all employment-related discussions and negotiations concerning the Company's officers and directors, including all parties to such communications, when they occurred, and the specific content discussed/communicated.

42.     Any communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board. Such information may illuminate the motivations that would prevent fiduciaries from acting solely in the best interests of the Company's shareholders.

43.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Carbon Black shareholders.

**3. Material Omissions Concerning Morgan Stanley's Potential Conflicts of Interest**

44.     The Solicitation Statement omits material information concerning potential conflicts of interest involving Morgan Stanley.

45.     The Solicitation Statement states that "Morgan Stanley provided customary

relationship disclosures with respect to VMware, to the Special Committee . . . [which] considered the disclosures and determined that such relationships would not interfere with Morgan Stanley's ability to provide financial advisory services to the Special Committee."

46.     On August 22, 2019, the same day the Proposed Transaction was announced, VMware announced it was acquiring Pivotal Software, Inc. ("Pivotal") for a total enterprise value of $2.7 billion (the "Pivotal Acquisition"). Morgan Stanley served as financial advisor to Pivotal and/or the Special Committee of the Pivotal board of directors. Dell Technologies, Inc. ("Dell Technologies") controls a majority of the shares of VMware.

47.     The Solicitation Statement, however, fails to disclose whether these "customary relationship disclosures with respect to VMware" also included disclosures concerning Dell Technologies and Pivotal.

48.     The Solicitation Statement discloses that: (i) Morgan Stanley was paid approximately $30 million in fees by the "Dell Group" (defined as Dell Technologies, Pivotal, and Secureworks, Inc.) for "financing services" within the last two years prior to the date of Morgan Stanley's opinion; and (ii) Morgan Stanley and its affiliates would expect to receive fees for providing financial advisory or financing services to the Company, VMware, and/or the Dell Group in the future.

49.     The Solicitation Statement, however, does not make clear the amount of compensation Morgan Stanley received and/or expects to receive from each of Dell Technologies, Pivotal (including the financial advisory services it provided in connection with the Pivotal

11

Acquisition), and Secureworks, Inc.[2]

50.     Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis. thereto

51.     Here, disclosure of this information is even more material because the Proposed Transaction was negotiated over a short timeframe and Morgan Stanley had a unique opportunity to steer a sale of the Company towards VMware and Dell Technologies and away from other potential acquirors.

52.     The omission of the above-referenced information renders the Solicitation Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to Carbon Black shareholders.

## COUNT I
### For Violations of Section 14(e) of the Exchange Act
### Against All Defendants

53.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

54.     Section 14(e) of the Exchange Act states, in relevant part:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

---

[2] Within the Solicitation Statement, Morgan Stanley makes a distinction between "financial advisory services" and "financing services" yet does not disclose the amount of fees Morgan Stanley received in connection with the financial advisory services it provided to the Dell Group, most notably, the financial advisory services it provided in connection with the Pivotal Acquisition.

55.    During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Solicitation Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(e) of the Exchange Act.

56.    Each of the Individual Defendants, by virtue of their positions within the Company as officers and/or directors, were aware of materially false and/or misleading and/or omitted information but failed to disclose such information, in violation of Section 14(e) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Solicitation Statement with respect to the Proposed Transaction.

57.    The false and misleading statements and omissions in the Solicitation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.

58.    Defendants acted knowingly or with deliberate recklessness in filing or causing the filing of the materially false and misleading Solicitation Statement.

59.    By reason of the foregoing, Defendants violated Section 14(e) of the Exchange Act.

60.    Because of the false and misleading statements in the Solicitation Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### For Violations of Section 14(d)(4) of the Exchange Act and Rule 14d-9 Promulgated Thereunder
### Against All Defendants

61.    Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

62.     Defendants caused the Solicitation Statement to be issued with the intent to solicit shareholder support for the Proposed Transaction.

63.     Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers. Specifically, Section 14(d)(4) states, in relevant part:

> Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

64.     SEC Rule 14d-9(d), adopted to implement Section 14(d)(4) of the Exchange Act, states, in relevant part:

> Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

65.     In accordance with SEC Rule 14d-9, Item 8 of Schedule 14D-9 requires that a company:

> Furnish such additional material information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

66.     During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Solicitation Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9.

67.     Each of the Individual Defendants, by virtue of their positions within the Company as officers and/or directors, were aware of materially false and/or misleading and/or omitted

information but failed to disclose such information, in violation of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Solicitation Statement with respect to the Proposed Transaction.

68.     Defendants acted knowingly or with deliberate recklessness in filing the materially false and misleading Solicitation Statement which omitted material information.

69.     The false and misleading statements and omissions in the Solicitation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.

## COUNT III
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

70.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

71.     The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Solicitation Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Solicitation Statement.

72.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly

owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Solicitation Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

73. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Solicitation Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Solicitation Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Solicitation Statement.

74. In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Solicitation Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

75. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

76. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Sections 14(e), 14(d)(4), and Rule 14d-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of

the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and the tender offer in connection with the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to the Company's shareholders;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding Plaintiff rescissory damages;

C.      Declaring that Defendants violated Sections 14(e), 14(d)(4), and 20(a) of the Exchange Act, and Rule 14d-9 promulgated thereunder;

D.      Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expenses and expert fees; and

E.      Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.


Dated: September 17, 2019                              Respectfully submitted,

                                                      **HALPER SADEH LLP**

                                                      /s/ Daniel Sadeh
                                                      Daniel Sadeh, Esq.
                                                      375 Park Avenue, Suite 2607
                                                      New York, NY 10152
                                                      Telephone: (212) 763-0060
                                                      Facsimile: (646) 776-2600

Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*